AARON D. FORD
  Attorney General
ANDREA M. DOMINGUEZ, Bar No. 15209
  Deputy Attorney General
State of Nevada
100 N. Carson Street
Carson City, NV  89701-4717
Tel: (775) 684-1163
E-mail: adominguez@ag.nv.gov

*Attorneys for Defendant*
*Eric Delafontaine*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ASHENAFI G. ABERHA,<br><br>    Plaintiff,<br><br>vs.<br><br>DIRECTOR NEVADA DEPT OF CORRECTIONS, et al.,<br><br>    Defendants. | Case No.  3:19-cv-00606-MMD-WGC<br><br>**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Defendant, Eric Delafontaine, by and through counsel, Aaron D. Ford, Attorney General of the State of Nevada, and Andrea M. Dominguez, Deputy Attorney General, do hereby move for summary judgment.  This Motion is brought pursuant to Federal Rule of Civil Procedure 56 on the grounds that there are no genuine disputes as to any material fact and Defendant is entitled to judgment as a matter of law.  This Motion is based on the following Memorandum of Points and Authorities, the attached exhibits, and all papers and pleadings on file in this action.

**I.  INTRODUCTION**

This Court should grant summary judgment.  Plaintiff Ashenafi Aberha (Aberha) alleges while being incarcerated at Ely State Prison (ESP), that Defendant, Eric Delafontaine (Officer Delafontaine) failed to protect him in violation of the Eighth Amendment by allowing another inmate to sexually assault him.  (ECF No. 5 at 4-5) Despite these allegations, Aberha's case is deficient because he cannot show that Officer

1

1 Delafontaine was aware of and disregarded an excessive risk to his safety. Further,
2 Office Delafontaine is entitled to qualified immunity.

3 **II. NATURE OF THE ACTION**

4 Aberha is an inmate in the lawful custody of the Nevada Department of
5 Corrections (NDOC) and is currently housed at ESP. (ECF No. 11-1 at 1). Aberha filed a
6 civil rights action pursuant to 42 U.S.C. § 1983. (*Id.*). The events at issue in this
7 complaint allegedly occurred on September 20, 2018, while Aberha was housed at ESP.
8 (*Id.* at 4).

9 Aberha sues NDOC Director James Dzurenda (Director Dzurenda), Warden W.
10 Gittere (Warden Gittere), Correctional Officer Sunday (Officer Sunday), Correctional
11 Officer Delafontaine (Officer Delafontaine), and Correctional Officer G.T. Davis (Officer
12 Davis) (ECF No. 11 at 3). Aberha alleges three counts and seeks monetary damages and
13 injunctive relief. (*Id.*).

14 In the Screening Order, Aberha's Eighth Amendment claims for failure to protect
15 with respect to Director Dzurenda, Warden Gittere, Officer Sunday, and Officer Davis
16 were dismissed from the action. (*Id.* at 6). The § 1983 claims against another inmate for
17 sexual verbal harassment were dismissed from this action as well. (*Id.*) A court ordered
18 early mediation conference was held on October 20, 2020. (ECF No. 15) A settlement was
19 not reached. (*Id.*) Defendant filed an Answer to Aberha's Complaint on December 21,
20 2020. (ECF No. 28) Discovery closed on March 22, 2021. (ECF No. 30) Now that
21 discovery has concluded, Defendant moves for summary judgment.

22 **III. FACTUAL ANALYSIS**

23     **A. Plaintiff's Factual Account**

24 Aberha alleges that while at ESP, prison officials housed him with a sexual
25 predator, inmate Daniel Booker. (ECF No. 11 at 3). Aberha contends that Booker
26 sexually assaulted him three times while he was in the cell with him. (*Id.*). Aberha
27 reported the first incident to Officer Delafontaine, who was working in the unit, but
28 Officer Delafontaine made fun of him. (*Id.*) When Aberha got off the bed to use the

bathroom, he claims that Booker exposed himself to him. (*Id.*) Booker then choked Aberha, threw him against the wall, and stuck his finger in his anus. (*Id.*) When Aberha got away, he pushed the intercom. (*Id.*) Thirty minutes later, a C/O answered the intercom and responded, "It's count time." (*Id.*) Booker allegedly told Aberha that if he said anything, he would kill him. (*Id.*)

Aberha further contends that when Caseworker Travis came to the cell, she witnessed Booker yelling and screaming at him. (*Id.* at 4) Travis told Booker to get out of Aberha's face. (*Id.*) Aberha alleges that Booker pushed him onto the bed, pulled his shorts down, choked Plaintiff, punched Plaintiff in the stomach, and said, "I'm going to rape you." (*Id.*) Aberha alleges that he could feel Booker's penis on top of his legs while Booker was on top of him. (*Id.*) Booker continued to assault Aberha until the officers came into the room to stop Booker from attacking him. (*Id.*)

Aberha filed a grievance and a Prison Rape Elimination Act (PREA) report. (*Id.*) The nurses and doctors examined Aberha for injuries. (*Id.*) Aberha alleges that he had continuous pain in his testicles after the attack. (*Id.*) Aberha claims the attack could have been avoided if the C/O had not said it was count time and made him wait even though his life was in danger.[1] (*Id.*) Aberha alleges that the prison officials have denied all levels of his grievances. (*Id.*)

**B.     Defendant's Undisputed Facts**

On September 20, 2018 at around count time (11:00 a.m.), Officer Delafontaine was told by Aberha that it was not working with his cellmate and that they needed to be separated. (*See* Declaration of Eric Delafontaine attached as **Exhibit A**) Correctional Officer Sunday talked to the inmates in 4B15 and told them it was count time and asked if they could wait until count was done to be separated, otherwise he would take care of it right now. (*Id.*) Both Aberha and inmate Booker agreed they could wait until after count to be separated. (*Id.*) Once count was commenced both Officer Delafontaine and Officer

---

[1] Although Aberha alleges that the attack could have been avoided if the C/O had not said it was count time and made him wait to be separated, it is undisputed that the alleged attack started before the intercom button was pressed.

3

Sunday stepped out for count. (*Id.*)  At no point in time did Aberha tell Officer Delafontaine that he had been sexually assaulted by inmate Booker. (*Id.*)

Caseworker Melissa Travis (CCS Travis) was notified by the unit staff that Aberha and inmate Booker could no longer be housed together in their assigned cell in Unit 4B. (*See* Declaration of Melissa Travis attached as **Exhibit B**)  CCS Travis called the classification housing coordinator to inform them the inmates were requesting separation. (*Id.*)  CCS Travis was asked to speak with both inmates to see if the situation could be resolved. (*Id.*)  At approximately 11:43 a.m. CCS Travis walked through the unit control post onto the Unit 4B tier to speak with both inmates. (*Id.*; *see also* **Exhibit C**)  As CCS Travis approached the cell door, she was told by inmate Booker that he and Aberha could no longer house together because they were too different and Aberha ran his mouth a lot. (*Id.*)  Aberha was standing near the back of the cell and tried to speak to CCS Travis when inmate Booker hit Aberha in the face and knocked him onto the bottom bunk. (*Id.*)  CCS Travis ordered inmate Booker to stop striking Aberha and to come back to the front of the cell to discuss the situation. (*Id.*)  CCS Travis immediately waived to correctional staff for assistance. (*Id.*)  Inmate Booker proceeded to choke Aberha screaming at him. (*Id.*)  CCS Travis yelled and ordered inmate Booker to stop striking Aberha, to which Booker complied and walked to the front of the cell as correctional staff approached to respond to the incident. (*Id.*)  While Aberha alleged that Booker had pulled down his shorts, if this occurred, it was before any NDOC personnel arrived on the scene as everyone was fully clothed at all times while CCS Travis and the correctional officers responded to the cell. (*Id.*)  CCS Travis did not witness sexual activities of any kind. (*Id.*)

Officer Sunday and Officer Delafontaine responded to CCS Travis' request for assistance. (*see* Exhibits A and C)  When they got to the cell door, the inmates were separated and on separate sides of the cell. (*Id.*)  Both inmates were restrained without incident. (*Id.*)  Aberha was taken to the top shower and inmate Booker was taken to the lower shower[2]. (*Id.*)  Aberha promptly received medical treatment. (**Exhibit D**)  Aberha

---

[2] Placement of inmates in the shower is routine in these situations as it is a location that can separate the inmates for privacy and security.

4

1  told medical that he was choked by inmate Booker but denied any other injuries or pain.
2  (*Id.*)  The only injuries Aberha received was a scratch to the right side of his neck.  (*Id.*)
3  After shift command spoke with both inmates, Aberha was then taken back to his cell.
4  (*see* Exhibit A)

5  On September 28, 2018, Aberha reported the alleged sexual assault to the PREA
6  hotline.  (**Exhibit E**)  Investigative Report No. IR-2018-ESP-001453 was opened by the
7  Inspector General's Office on October 1, 2018.  (*Id.*)   A preliminary investigation was
8  completed, and the matter was referred for a criminal investigation on November 19,
9  2018.  (*Id.*)   The investigation was closed as unsubstantiated for sexual abuse on
10 September 12, 2019.  (*Id.*)

11 Aberha filed Informal Grievance report 2006-30-73539 on October 25, 2018.
12 (**Exhibit F** at 7)  In his Informal Grievance Aberha alleges that on September 20, 2018,
13 his cellmate inmate Booker sexually abused him three times in cell 4B 15.  (*Id.*)  Aberha
14 also alleged he spoke with an investigator on October 18, 2018 and would like to know
15 what the status of the investigation was.  (*Id.*)  Melissa Travis denied Aberha's grievance
16 and told him that the allegation has already been referred to the IG's office and is in
17 active investigation.  (*Id.* at 8)  When the investigation is completed, Aberha was
18 informed that he would receive notification of the outcome.  (*Id.*)

19 Aberha filed a First Level appeal on December 5, 2018.  (*Id.* at 4-5)  In his First
20 Level Grievance Aberha restated the allegations from the Informal Grievance and asked
21 to be transferred to another prison.  (*Id.* at 5)  Warden Gittere denied Aberha's grievance
22 on December 7, 2018 and told Aberha that the grievance is already under investigation
23 and has not been completed yet.  (*Id.* at 6)  Aberha was also told that when the
24 investigation was complete, he would be notified, and that he could discuss his concerns
25 with housing and classification with his caseworker.  (*Id.*)

26 Aberha filed a Second Level appeal on January 1, 2019.  (*Id.* at 1-2)  In his Second
27 Level appeal Aberha restated the allegations from the Informal Grievance and again
28 requested to know the status of the report.  Deputy Director Harold Wickham denied

1  Aberha's grievance on January 14, 2019 and told Aberha that the IG's office is currently
2  investigating the matter and that he would be notified once it was completed. (*Id.* at 3)
3  Aberha was also told that he could discuss his concerns about his housing and
4  classification with his caseworker. (*Id.*)

5  **IV.    LEGAL ARGUMENT**
6      **A.    Standard of Review**

7  Summary judgment "should be rendered if the pleadings, the discovery and
8  disclosure materials on file, and any affidavits show there is no genuine issue as to any
9  material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ.
10 P. 56(c). Summary judgment allows courts to avoid unnecessary trials when there is no
11 dispute as to the facts before the court. *Id.*; *Northwest Motorcycle Ass'n v. United States*
12 *Dep't of Agric.*, 18 F .3d 1468, 1472 (9th Cir. 1994). The purpose of summary judgment is to
13 isolate and then terminate claims that are factually unsupported. *Celotex Corp. v. Catrett*,
14 477 U.S. 317, 323- 24 (1986). A moving party is not required to disprove the non-moving
15 party's claims. *Id.* Instead, the moving party is simply required to point out the absence of
16 evidence supporting the non-moving party's claims. *Id.* The non-moving party is then
17 required to come forward with some evidence supporting his claim. *Anderson v. Liberty*
18 *Lobby, Inc.*, 477 U.S. 242, 255 (1986). Mere allegations or denials in the pleadings are not
19 sufficient to show a genuine issue for trial. *Id.* at 248.

20 Material facts are facts that might affect the outcome of the case. *Anderson*, 477 U.S.
21 at 248. The court should not consider disputes concerning irrelevant or unnecessary facts.
22 *Id.* Where there is a complete failure of proof on an essential element of the case for the
23 non- moving party, all other facts become immaterial, and the moving party is entitled to
24 judgment as a matter of law. *Celotex*, 477 U.S. at 323-24.

25 "When opposing parties tell two different stories, one of which is blatantly
26 contradicted by the record, so that no reasonable jury could believe it, a court should not
27 adopt that version of the facts for purposes of ruling on a motion for summary judgment."
28 *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The United States Supreme Court has altered the summary judgment standard for inmate cases. *Beard v. Banks*, 126 S.Ct. 2572, 2576 (2006). Although inmate non-moving parties may still be entitled to have the facts reviewed "in a light most favorable," this favorable review is tempered "in light of the deference that courts must show to [the] prison officials." *Id.*

### B. Eighth Amendment Failure to Protect Claim Against Officer Delafontaine

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981); *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The "treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). The Eighth Amendment imposes duties on prison officials to take reasonable measures to guarantee the safety of inmates and to ensure that inmates receive adequate food, clothing, shelter, and medical care. *Farmer*, 511 U.S. at 832.

In *Farmer*, the Supreme Court established a very demanding standard for "deliberate indifference." Negligence is insufficient. *Id.* at 835. Even civil recklessness (failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should be known) is insufficient to establish an Eighth Amendment violation. *Id.* at 836–37. It is not enough that a reasonable person would have known of the risk or that a defendant should have known of the risk. *Id.* at 842. Rather, deliberate indifference is established only where the defendant subjectively "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir.2004) (internal citation omitted) (emphasis added). Prison officials may avoid Eighth Amendment liability by showing:

> (1) "that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger"; (2) "that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent"; or (3)

that "they responded reasonably to the risk, even if the harm ultimately was not averted."*Rodriguez v. Secretary for the Department of Corrections*, 508 F.3d 611 at 617–18 (11th Cir.2007) (quoting *Farmer*, 511 U.S. at 844, 114 S.Ct. at 1982–83 (1994)).

After reviewing the record, the evidence shows that there is insufficient evidence for a reasonable jury to conclude that Officer Delafontaine was aware that inmate Booker posed a substantial risk of harm to Aberha.

As stated above, the only thing Aberha said to Officer Delafontaine was that it was not working with his cellmate. (*see* Exhibit A) At no time did Aberha tell Officer Delafontaine that inmate Booker had sexually assaulted him or posed a serious risk to his safety. (*Id.*) In fact, when asked Aberha agreed to wait until after count was commenced to be separated from inmate Booker. (*Id.*) Therefore, it is not reasonable to believe that Officer Delafontaine knew of and disregarded an excessive risk to Aberha's safety.

When Officer Delafontaine was alerted by CCS Travis to the fight between Aberha and inmate Booker, he responded promptly. (*see* Exhibits A and C) Aberha and inmate Booker were immediately separated. (*Id.*) Aberha was given prompt medical treatment, and then taken back to his cell. (*Id.*) As stated above, inmate Booker was removed from the floor. Thus, Officer Delafontaine acted quickly and reasonably to remove any threats to Aberha's safety. Further, the IG conducted both a preliminary investigation and a criminal investigation and found Aberha's claims that inmate Booker sexually abused him to be unsubstantiated.

Consequently, Aberha cannot produce sufficient evidence of Officer Delafontaine's deliberate indifference to such a risk. Even assuming facts existed from which Officer Delafontaine could have inferred that inmate Booker posed a substantial risk of serious harm to Aberha, there is no evidence that he actually drew that inference. Had he inferred that inmate Booker posed a serious harm to Aberha – and that there was a strong likelihood that such serious harm would arise – he would have separated Aberha and Booker prior to count taking place. Therefore, Aberha cannot prevail on this issue.

**C.   Alternatively, Officer Delafontaine is Entitled to Qualified Immunity**

Officer Delafontaine is entitled to Qualified Immunity. It is a long-standing principle that governmental officials are shielded from civil liability under the doctrine of Qualified Immunity. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

> The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." The rule of qualified immunity "'provides ample support to all but the plainly incompetent or those who knowingly violate the law.'" "Therefore, *regardless of whether the constitutional violation occurred,* the officer should prevail if the right asserted by the plaintiff was not 'clearly established' or the officer could have reasonably believed that his particular conduct was lawful." Furthermore, "[t]he entitlement is an immunity from suit rather than a mere defense to liability; ... it is effectively lost if a case is erroneously permitted to go to trial."

*Shroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995) (emphasis in original; internal citations omitted).

When conducting the qualified immunity analysis, courts "ask (1) whether the official violated a constitutional right and (2) whether the constitutional right was clearly established." *C.B v. City of Sorona*, 769 F.3d 1005, 1022 (9th Cir. 2014) (internal citation omitted).

The second inquiry, whether the Constitutional right in question was clearly established, is an objective inquiry that turns on whether a reasonable official in the position of the defendant knew or should have known at the time of the events in question that his or her conduct was Constitutionally infirm. *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987); *Lacey v. Maricopa Cty.*, 693 F.3d 896, 915 (9th Cir. 2012). Only where a governmental official's belief as to the constitutionality of his or her conduct is "plainly incompetent" is Qualified Immunity unavailable. *Stanton v. Sims*, 134 S.Ct. 3, 5 (2013) (per curiam). Governmental officials are entitled to high deference when making this determination, (*Anderson*, 483 U.S. at 640), requiring the Court to assess whether Qualified Immunity is appropriate "in light of the specific context of the case."

*Tarabochia v. Adkins*, 766 F.3d 1115, 1121 (9th Cir. 2014) (*quoting Robinson v. York*, 566 F.3d 817, 821 (9th Cir. 2009)).

Although the Supreme Court "does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Witherow v. Baker*, No. 18-17233, 2021 (9th Cir. May 18, 2021) (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017)). "This demanding standard protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (quoting *Wesby*, 138 S. Ct. at 589 (cleaned up)). In determining whether this standard is met, the Court considers whether there are "cases of controlling authority" in the plaintiffs' jurisdiction at the time of the incident "which clearly established the rule on which they seek to rely," or "a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful." *Id.* (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)). As such, "liability will not attach unless there exists a case where an officer acting under similar circumstances . . . was held to have violated the [Eighth Amendment.]" *Emmons v. City of Escondido*, 921 F.3d 1172, 1174 (9th Cir. 2019) (*citing White v. Pauly,* 137 U.S. 548, 551-52 (2017) (per curiam).[3]

The Eighth Amendment imposes duties on prison officials to take reasonable measures to guarantee the safety of inmates and to ensure that inmates receive adequate food, clothing, shelter, and medical care. *Farmer*, 511 U.S. at 832. As stated above deliberate indifference is established only where the defendant subjectively "knows of and disregards an excessive risk to the inmate's health and safety. *Toguchi*, 391 F.3d at 1057.

Given the particularized facts and circumstances of this case, it was not clearly established that any action taken by Officer Delafontaine was unconstitutional, because Officer Delafontaine had no notice that inmate Booker posed a serious risk to Aberha's safety. Further, Officer Delafontaine was not aware of Aberha's allegations that inmate

---

[3] As recently as September 2021, the Ninth Circuit affirmed the importance of qualified immunity in the prison context. *See Witherow v. Baker,* No. 18-17233, 2021 (9th Cir. May 18, 2021) (holding prison officials were entitled to qualified immunity where they screened and monitored an inmate's call to his attorney).

10

1  Booker sexually assaulted him until after the fight took place. With no notice, Officer
2  Delafontaine cannot be liable for a violation of the Eighth Amendment. Therefore, Officer
3  Delafontaine is entitled to qualified immunity because his actions were reasonable.

4  **V.   CONCLUSION**

5  Officer Delafontaine is entitled to summary judgment on the basis of qualified
6  immunity because Aberha cannot demonstrate that every reasonable prison official would
7  have perceived an excessive or intolerable risk of serious injury to Aberha. Further,
8  Aberha has failed to prove evidence of damages. Officer Delafontaine respectfully request
9  this Court enter summary judgment in his favor.

10 **VI.  EXHIBITS**

11  A.   Declaration of Eric Delafontaine
12  B.   Declaration of Melissa Travis
13  C.   Video of Unit 4B on September 20, 2018 during the incident
14  D.   Unusual Occurrence Dated September 20, 2018
15  E.   Investigative Report No. IR-2018-ESP-001453
16  F.   Inmate Grievance Report No. 2006-30-73539

17  DATED this 21st day of May, 2021.

AARON D. FORD
Attorney General

By: _____
ANDREA M. DOMINGUEZ, Bar No. 15209
Deputy Attorney General

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I certify that I am an employee of the Office of the Attorney General, State of Nevada, and that on this 21st day of May, 2021 I caused to be served a copy of the foregoing, **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** by U.S. District Court CM/ECF Electronic Filing to:

Ashenafi G. Aberha #1177262
Ely State Prison
P.O. Box 1989
Ely, Nevada 89301
esp_lawlibray@doc.nv.gov

                                                                                                                                /s/ _____
An employee of the
Office of the Attorney General