UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ASHENAFI G. ABERHA,<br><br>Plaintiff<br><br>v.<br><br>DIRECTOR NEVADA DEPT OF CORRECTIONS, et. al.,<br><br>Defendants | Case No.: 3:19-cv-00606-MMD-WGC<br><br>**Report & Recommendation of United States Magistrate Judge**<br><br>Re: ECF No. 37 |

    This Report and Recommendation is made to the Honorable Miranda M. Du, Chief United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

    Before the court is defendant Eric Delafontaine's Motion for Summary Judgment. (ECF Nos. 37, 37-1 to 37-5, 39-1, 41 (notice of manually filed CD), errata at ECF Nos. 50, 50-1 to 50-5.) Plaintiff filed a response. (ECF No. 47.) Defendant filed a reply. (ECF No. 51.)

    After a thorough review, it is recommended that the motion be granted.

## I. BACKGROUND

    Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 5.) The events giving rise to this action took place while Plaintiff was housed at Ely State Prison (ESP). (*Id.*)

    The court screened the complaint and allowed Plaintiff to proceed with an Eighth Amendment failure to protect claim against Delafante (subsequently identified as Eric

Delafontaine) and a Doe officer when Plaintiff learned his/her identity. The other claims and defendants were dismissed. (ECF No. 11.)

Plaintiff alleges that while at ESP, officials housed him with a sexual predator, inmate Daniel Booker. On September 20, 2018, Booker sexually assaulted Plaintiff three times while Plaintiff was in the cell with him. Plaintiff reported the first incident to Delafontaine, who was working in the unit, but Delafontaine made fun of Plaintiff and discounted the situation. When Plaintiff got off the bed to use the bathroom, Booker pulled down his pants to expose himself to Plaintiff. Booker then choked Plaintiff, threw Plaintiff against the wall, and stuck his finger in Plaintiff's anus. When Plaintiff got away, he pushed the intercom. Thirty minutes later, a correctional officer answered and responded, "It's count time." Booker told Plaintiff that if he said something, he would kill Plaintiff. Later, Booker pushed Plaintiff on the bed, pulled Plaintiff's shorts down, choked Plaintiff, punched him in the stomach, and said, "I'm going to rape you." Plaintiff could feel Booker's penis on top of his legs while Booker was on top of him.

Plaintiff filed a grievance and report under the Prison Rape Elimination Act (PREA). The nurses and doctor's examined Plaintiff for injuries. He had continuous pain in his testicles after the attack.

Delafontaine moves for summary judgment, arguing that Plaintiff cannot show Delafontaine was aware of and disregarded a risk to Plaintiff's safety, and alternatively, that he is entitled to qualified immunity.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp.*

v. *Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id.* at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went

uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

**A. Doe Defendant**

Plaintiff has not yet identified the Doe defendant. The scheduling order gave Plaintiff until February 20, 2021, to add parties or amend (ECF No. 30) and Plaintiff did not identify and

move to amend to add the Doe defendant as a party; therefore, the Doe defendant should be dismissed without prejudice.

**B. Failure to Protect vs Delafontaine**

    **1. Legal Standard**

Under the Eighth Amendment, prison conditions should not "involve the wanton and unnecessary infliction of pain" or be "grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Although prison conditions may be, and often are, restrictive and harsh, prison officials "must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)(quoting *Hudson v. Palmer*, 486 U.S. 517, 526-27 (1984)).

"[P]rison officials have a duty...to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (citations and quotations omitted); *see also Cortez v. Skol*, 776 F.3d 1046, 1050 (9th Cir.2015) (citing *Farmer*, 511 U.S. at 833). "Having incarcerated 'persons [with] demonstrated proclivit[ies] for antisocial criminal, and often violent, conduct,' having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." *Farmer*, 511 U.S. at 833 (internal citations omitted). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Id*. at 834 (citing *Rhodes*, 452 U.S. at 347).

To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent" to serious threats to the inmate's safety. *Farmer*, 511 U.S. at 834; *see also Labatad v. Corrections Corp. of America*, 714F.3d 1155, 1160 (9th Cir. 2013) (citing

*Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002)). Under the deliberate indifference standard, a violation of the Eighth Amendment is only found when an objective and subjective component are met. *See Farmer*, 511 U.S. at 834; *Labatad*, 714F.3d at 1160.

First, "the deprivation alleged must be, objectively, sufficiently serious...; a prison official's act or omission must result in the denial of 'the minimal civilized measures of life's necessities.'" *Farmer*, 511 U.S. at 834 (citations and quotations omitted). When a plaintiff claims prison officials failed to take reasonable steps to protect, the plaintiff must show that "he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* (citations omitted).

Second, the inmate must satisfy the subjective element. This means that the prison official must "know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "Mere negligence is not sufficient to establish liability." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). "Liability may only follow if a prison official 'knows that inmates face a substantial risk of serious harm and disregard that risk by failing to take reasonable measures to abate it.'" *Labatad*, 714 F.3d at 1160 (quoting *Farmer*, 511 U.S. at 847).

Prison officials may avoid liability by: (1) proving they were unaware of the risk, or (2) proving they "responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844-45.

**2. Analysis**

According to Delafontaine, on September 20, 2018, at around count time (which is at 11:00 a.m.), Plaintiff told him that it "was not working" with his cellmate and that they needed to

6

be separated. (Delafontaine Decl., ECF No. 37-1 ¶ 4.) Then Correctional Officer Sunday (not a defendant) talked to the inmates and told them it was count time and asked if they could wait until count was done to be separated, otherwise he would take care of it right then. (*Id.*) Delafontaine was informed by Officer Sunday that Plaintiff and his cellmate, Booker, agreed they could wait until after count to be separated. (*Id.*) Once count commenced, Officer Delafontaine and Officer Sunday stepped out for count. Delafontaine maintains that at no time did Plaintiff tell him that he had been sexually assaulted by Booker. (*Id.* ¶ 5.)

Caseworker Travis (also not a defendant) was notified by unit staff that Plaintiff and Booker could no longer be housed together. (Travis Decl., ECF No. 37-2 ¶ 4.) Travis called the classification housing coordinator to inform them the inmates were requesting separation. Travis was asked to speak with both inmates to see if the situation could be resolved. (*Id.*) At approximately 11:43 a.m., Travis walked through the unit control post to the unit tier to speak with both inmates. As she approached the cell door, she was told by inmate Booker that he and Plaintiff could no longer house together because they were too different and Plaintiff ran his mouth a lot. Plaintiff was standing near the back of the cell and tried to speak to Travis when Booker hit Plaintiff in the faced and knocked him onto the bottom bunk. Travis ordered Booker to stop striking Plaintiff and come to the front of the cell to discuss the situation. Travis immediately waved to correctional staff for assistance. (Travis Decl., ECF No. 37-2 ¶ 5; Delafontaine Decl., ECF No. 37-1 ¶ 6.)

Booker proceeded to choke Plaintiff. Travis yelled and ordered booker to stop, and Booker complied and walked to the front of the cell as correctional staff approached to respond to the incident. (Travis Decl., ECF No. 37-2 ¶ 5.) Everyone was fully clothed at all times while Travis and the other correctional officers responded, and Travis did not hear Booker threaten

Plaintiff with rape and did not see Booker expose himself. (Travis Decl., ECF No. 37-2 ¶ 6l Delafontaine Decl., ECF No. 37-1 ¶ 6.) Travis did not witness sexual activity of any kind. (Travis Decl., ECF No. 37-2 ¶ 7.)

Officers Sunday and Delafontaine responded to Travis' request for assistance. (Delafontaine Decl., ECF No. 37-1 ¶ 6.) When they got to the cell door, the inmates were separated on opposite sides of the cell. Both were restrained without incident. Plaintiff was taken to the top shower and Booker was taken to the lower shower. (*Id.*) Plaintiff promptly received medical treatment. (ECF No. 39-1.)

Delafontaine asserts that Plaintiff told medical he was choked by Booker and denied any other injuries or pain; however, the unusual occurrence report reflects that Plaintiff reported that Plaintiff told medical that Booker said "he was going to fuck me up. He tried to rape me. The caseworker (Travis) seen it all." He also reported that Booker tried to choke him, but he denied other injuries or time. At the end of the assessment, Plaintiff complained of being raped again and said he did not want to go back to the same cell. (ECF No. 39-1 at 2.) The report notes an abrasion to the right side of the neck. The caseworker was notified of a possible PREA allegation. (*Id.*) Plaintiff was subsequently taken back to his cell.

On September 28, 2018, Plaintiff reported the alleged sexual assault to the PREA hotline. (ECF No. 37-4.) Investigative Report IR-2018-ESP-001453 was opened by the Inspector General's Office on October 1, 2018. A preliminary investigation was completed, and the matter was referred for criminal investigation on November 19, 2018. The investigation was closed as unsubstantiated for sexual abuse on September 12, 2019. (*Id.*)

Plaintiff filed an informal grievance, 2006-30-73539 on October 25, 2018. (ECF No. 37-5 at 8.) He alleged that on September 20, 2018, Booker sexually abused him three times. He also

asked about the status of the investigation.(*Id.*)  Travis denied the grievance and told him it had already been referred to the Inspector General's Office and an investigation was ongoing. He would be informed of the outcome when the investigation was complete. (ECF No. 37-5 at 9.) He filed first and second level grievances, repeating his allegations and asking for the status of the investigation. The grievances were denied, advising Plaintiff that the investigation was ongoing. (*Id*. at 2-7.)

Delafontaine argues there is no evidence that he was aware that Booker posed a substantial risk of harm to Plaintiff.

In his response, Plaintiff states that Delafontaine's declaration is misleading and false. He points out that the declaration is based on a conversation Delafontaine had with Correctional Officer Sunday, and argues it is not based on personal knowledge and there is no declaration from Correctional Officer Sunday. In addition, Plaintiff contends that Delafontaine admits he was informed of a problem in Plaintiff's cell, but then he and Sunday "stepped out" of the unit. Plaintiff claims this shows deliberate indifference to his safety.

Plaintiff also objects to Travis' declaration, asserting that she has no knowledge of what transpired in the cell before she approached.

Finally, Plaintiff objects to Exhibit C, which is the DVD manually filed by Delafontaine. Plaintiff contends that it does not show what happened in the cell, and there is no audio revealing what was said by staff.

Plaintiff maintains that he was sexually assaulted and that Delafontaine did nothing to protect him.

First, with respect to Plaintiff's objection to Delafontaine's statement in his declaration of what Correctional Officer Sunday told him, the court construes this as a hearsay objection. The

statements attributed to Correctional Officer Sunday are statements that Delafontaine is offering to prove the truth of the matters offered in the statements and qualifies as hearsay. Fed. R. Evid. 801. Delafontaine does not argue that an exception applies that would otherwise make the statements admissible. Therefore, Plaintiff's objection to admission of those statements should be sustained. Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); Fed. R. Evid. 801, 803.

Second, insofar as Plaintiff objects to Travis' declaration, the court finds that the objection should be overruled, because it is based on her personal knowledge. Plaintiff may *argue* that her statements do not reveal what happened earlier in the cell, but that is not the basis for an evidentiary objection.

Third, Plaintiff objects to Delafontaine's Exhibit C, which is the DVD. Plaintiff objects to it on the basis that it does not show what transpired in the cell, and there is no audio regarding what was said to staff. Plaintiff's objection should be overruled. Again, while Plaintiff can *argue* that the video does not reveal what happened earlier in the cell, the DVD is relevant insofar as it is corroborative of Travis' declaration. It demonstrates that she went to the unit and spoke to an inmate through the cell door, and then the inmate is seen suddenly moving from the door to the rear of the cell and Travis waved for assistance. Eventually, the inmate returned to the front of the cell, and more officers arrived and the inmates were escorted, one at a time, to separate shower stalls where they were questioned and evaluated by medical.

The court now turns to the substantive analysis of the Eighth Amendment claim.

Delafontaine's argument focuses on the subjective prong of the deliberate indifference claim: whether he knew that Plaintiff faced a substantial risk of serious harm by keeping him in the cell with Booker, and failed to act to protect Plaintiff.

While the statements attributable to Correctional Officer Sunday should be excluded, Delafontaine's own statements are admissible. Delafontaine maintains that Plaintiff only told him that it "was not working" with his cellmate, but Plaintiff never told him that Booker had sexually assaulted Plaintiff. Delafontaine has met his burden, and the burden shifts to Plaintiff to establish that a genuine dispute exists as to whether Delafontaine knew Plaintiff faced a substantial risk of serious harm and failed to act to protect him.

Preliminarily, the court agrees with Delafontaine's argument in his reply that Plaintiff's response does not comply with Local Rule 56-1, which requires a response to a motion for summary judgment to contain a concise statement setting forth each fact material to the disposition that the party claims is genuinely in issue, citing the particular evidence on which the party relies.

In any event, the court finds that Plaintiff has failed to raise a genuine dispute of material fact to preclude the entry of summary judgment in Delafontaine's favor.

In *Labatad v. Corrections Corporation of America*, 714 F.3d 1155 (9th Cir. 2013), the Ninth Circuit declined to infer knowledge of a risk of harm to the plaintiff where the inmate plaintiff said he told an officer he should not be housed with another inmate without providing any other specifics. *Labatad*, 714 F.3d at 1161.

While Plaintiff claims that Delafontaine's declaration is false, Plaintiff does not point to any *evidence* to create a genuine dispute of material fact as to whether Delafontaine knew Plaintiff faced a substantial risk of serious harm from his cellmate Booker. Plaintiff does not

even dispute Delafontaine's statements that Plaintiff only told him that it wasn't working out with Booker and Plaintiff did not advise that Booker had sexually assaulted him. Plaintiff does not provide his own declaration, and his response does not even contain an argument that he said anything more or that he did in fact tell Delafontaine that Booker had sexually assaulted him. Nor does he submit evidence that Delafontaine would have otherwise been on notice that Booker posed a risk of harm to Plaintiff such as records of prior altercations between Plaintiff and Booker that Delafontaine would have been aware of.

The other evidence submitted by Delafontaine does not support an inference that Delafontaine knew Booker posed a risk of harm to Plaintiff. The Inspector General's report contains accounts from officers who were present at some point the day of the incident. None of them mention that Plaintiff made prior reports that Booker had sexually assaulted him. (ECF No. 37-4.) Travis' report for the Inspector General's Investigation as well as her declaration state that she was notified by unit staff on September 20, 2018, at approximately 11:50 a.m., that Plaintiff and Booker could no longer house together in their assigned cell, but she mentions nothing of a prior report of sexual assault. (ECF No. 37-4 at 3.)

When Plaintiff filed his grievance, he said that Booker sexually abused him on September 20, 2018, but he did not mention anything about telling Delafontaine about this prior to the incident. He did state that he filed a PREA report *after* the incident. (ECF No. 37-5.)

Simply stating that it "wasn't working out" with his cellmate, without any more details, is insufficient to establish that Delafontaine knew Plaintiff faced a substantial risk of serious harm by remaining in a cell with Booker.

For these reasons, summary judgment should be granted in Delafontaine's favor and the court need not reach Delafontaine's qualified immunity argument.

### IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order:

(1) **DISMISSING** the Doe defendant **WITHOUT PREJUDICE**;

(2) **OVERRULING** Plaintiff's evidentiary objections, except for his objection which the court construes as a hearsay objection regarding the statements attributed to Correctional Officer Sunday in Delafontaine's declaration, which should be **SUSTAINED**; and

(3) **GRANTING** Delafontaine's motion for summary judgment (ECF No. 37).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: September 29, 2021

_____
William G. Cobb
United States Magistrate Judge